IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Deanna Ecklund, Individually and as Personal Representative of the Estate of Gregory Scott Ecklund,<br><br>    Plaintiff,<br><br>v.<br><br>The United States of America,<br><br>    Defendant. | **COMPLAINT** |

      Plaintiff Deanna Ecklund, Individually and as Personal Representative of the Estate of Gregory Scott Ecklund, by and through her undersigned counsel, complaining of the Defendant, alleges as follows:

## JURISDICTIONAL ALLEGATIONS

      1.    Plaintiff Deanna Ecklund (hereinafter, "Plaintiff" or "Mrs. Ecklund") is the duly appointed Personal Representative of the Estate of her late husband, Gregory Scott Ecklund (hereinafter, "Decedent" or "Mr. Ecklund"), having been appointed by the Horry County Probate Court on March 4, 2022.

      2.    Plaintiff brings this action against the United States of America (hereinafter, "Defendant" or "United States") for injuries and damages Plaintiff and Decedent sustained as a result of the negligence, recklessness, and/or gross negligence of the United States and its employees, servants, and/or agents.

      3.    At all times relevant to this Complaint, Plaintiff and Decedent were citizens and residents of Horry County, South Carolina.

4.     Plaintiff brings this Complaint against the United States pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq.* and 28 U.S.C. § 1346(b)(1) for money damages as compensation for the injuries and death of Gregory Scott Ecklund, which were caused by the acts and/or omissions of employees, servants, and/or agents of the United States Government, working at different Veterans Administration medical facilities, including the Ralph H. Johnson VA Medical Center in Charleston, South Carolina and the Myrtle Beach VA Clinic in Horry County, South Carolina.

5.     Plaintiff also brings a cause of action against the United States for loss of consortium arising out of the injuries and damages alleged herein.

6.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1402(b) because Plaintiff resides in this judicial district. Additionally, a substantial part of the acts and/or omissions forming the basis of these claims occurred in the District of South Carolina, Florence Division.

7.     Plaintiff has fully complied with the provisions of 28 U.S.C. § 2675 of the Federal Tort Claims Act by giving formal notice in writing to the United States through the filing of a Form 95 with the Department of Veterans Affairs. Six months have elapsed since the Form 95 was filed, and Plaintiff has received neither an official denial or a resolution of her claims.

**FACTUAL ALLEGATIONS**

6.     Plaintiff Deanna Ecklund, as Personal Representative of the Estate of Gregory Scott Ecklund, brings these claims due to the substandard medical, nursing, ministerial, supervisory, general, and non-medical care, as well as other actions or inactions of agents, servants, and/or employees of different veterans administration medical facilities in South Carolina, including but not limited to the Ralph H. Johnson VA Medical Center in Charleston, South Carolina and the

Myrtle Beach VA Clinic in Myrtle Beach, South Carolina. These facilities are hereinafter referred to as "VAMC."

7. Mr. Ecklund had been a patient of the VAMC for many years and had a history of chronic obstructive pulmonary disease (COPD).

8. Mr. Ecklund had been a smoker since approximately 18 years of age, smoking between ten cigarettes to over one pack per day for nearly fifty years.

9. Mr. Ecklund had a known lung cancer risk factor of extensive smoking history that warranted annual screening.

10. Despite Mr. Ecklund having breathing difficulties for years, upon information and belief, his primary care and other medical providers at the VAMC did not address his high risk for lung cancer by ensuring completion of annual screening.

11. Without annual lung cancer screening in a high-risk patient, early signs and symptoms can go undetected and treatment is delayed.

12. In 2017, the Veterans Administration (hereinafter, "VA") instituted standards for diagnostic screening for lung cancer in long-term smokers. It is well understood in the medical community that long-term smokers are susceptible to cancer and when they meet a certain criterion, the standard of care requires a treating medical provider to begin diagnostic testing for lung cancer in long-term smoking patients.

13. Mr. Ecklund met that criterion, and he was not offered, nor did he receive, any type of diagnostic screening for lung cancer from the VA or the VAMC.

14. Mr. Ecklund began being seen as a primary care patient at the VAMC in approximately December 2012.

15. On December 26, 2012, Mr. Ecklund had a Primary Care New Patient appointment with Leonard L. Del Rosario, M.D. at the VAMC. The note from that appointment indicates that Mr. Ecklund advised that he was a current smoker who smoked one pack of cigarettes per day.

16. On May 16, 2013, Mr. Ecklund underwent a Pulmonary Function Test, performed by VA Respiratory Therapist David Richard McCommon, which showed severe obstructive pattern.

17. On February 6, 2014, Mr. Ecklund was seen by VAMC physician Jose Luis Morales-Vazquez, M.D. Dr. Morales-Vazquez's note indicates that spirometry and flow-volume loop showed "severe airway obstruction" and that Mr. Ecklund was to be followed for COPD. The note indicates that at the time, Mr. Ecklund continued to smoke.

18. On February 12, 2015, Mr. Ecklund was seen by Dr. Morales-Vazquez. At that visit, Mr. Ecklund reported that he had been experiencing a cough for a few months. The note also indicates that Mr. Ecklund was a smoker and had smoked for 43 years. Dr. Morales-Vazquez prescribed an Albuterol inhaler as a rescue medication and ordered Symbicort to treat Mr. Ecklund's COPD.

19. Between 2016 and 2020, Mr. Ecklund continued to be seen at the VAMC for his medical care. He continued to report during those appointments that he was an active smoker.

20. On November 3, 2016, Mr. Ecklund reported that he continued to smoke.

21. At a September 7, 2017 appointment, Mr. Ecklund reported that he smoked ½ pack per day.

22. On July 27, 2018, Mr. Ecklund reported that he smoked ½ pack per day and had smoked for 45 years.

23. On May 30, 2019, Mr. Ecklund reported that he smoked one pack per day and that he used tobacco every day.

24. Mr. Ecklund was seen at the VAMC at least yearly starting in December 2012.

25. Upon information and belief, the VAMC did not order or perform any chest x-rays, CT scans of the chest, or any other type of diagnostic screening on Mr. Ecklund until 2020, despite the VAMC's knowledge that Mr. Ecklund was a long-term smoker.

26. Additionally, the VAMC did not refer Mr. Ecklund to a pulmonary specialist between 2013 and 2020.

27. According to the VA records, on June 25, 2020, Plaintiff called and requested a return call from Mr. Ecklund's primary care physician or nurse.

28. A June 26, 2020 addendum to the note indicates that Mr. Ecklund was almost completely out of his Albuterol inhaler and was fearful that he would run out of his medication, on which he was very dependent. The note also states: "Patient requesting consideration for a nebulizer machine and meds reporting he believes this will be more effective than inhalers. Patient also reports it has been quite some time since he was seen by Pulmonary."

29. VA Primary Care RN Rosina Mae Draper concluded the note by indicating that a review of Mr. Ecklund's chart revealed that he was last seen by Pulmonary in 2013.

30. In response to Mr. Ecklund's request to be seen by a pulmonary specialist, on June 26, 2020, Dr. Morales-Vazquez wrote an order for a pulmonary function test. Once the pulmonary function test was completed, he indicated that Mr. Ecklund would be referred to a pulmonary specialist.

31. On July 27, 2020, Mr. Ecklund presented to the VAMC to request a handicap parking tag due to his increasing problems breathing while walking.

32. On July 27, 2020, a pulmonary function test was performed at the urging of Mr. and Mrs. Ecklund.

33. The pulmonary function test was performed by Steven L. Wetzel, RRT.

34. On the same date that the test was performed, Timothy Wells, M.D. prepared a Pulmonary Note interpreting the results of Mr. Ecklund's pulmonary function test. Dr. Wells noted that Mr. Ecklund had very severe air flow obstruction.

35. Despite these significant findings, no immediate radiology studies were ordered or performed.

36. Additionally, neither Mr. Ecklund's primary care physician at the VAMC nor any other VA provider took follow-up action regarding the July 27, 2020 pulmonary function test findings.

37. On August 21, 2020, Mr. Ecklund called the VAMC to follow up on the results of his July 27, 2020 pulmonary function test.

38. According to Mr. Ecklund's records, Tecca L. Snow, RN returned his call and "[i]nformed him that the PCP will need to review and advise on PFT [pulmonary function test] results."

39. Only after Mr. Ecklund followed up on his pulmonary function test results on August 21, 2020 did his VAMC primary care provider, Dr. Morales-Vazquez, order a chest x-ray.

40. The order for a chest x-ray was entered on August 21, 2020.

41. On September 23, 2020, Mr. Ecklund had a chest x-ray at the VAMC. He reported not receiving good improvement on Albuterol therapy.

42. The September 23, 2020 note indicates that Mr. Ecklund had not been seen by a pulmonary specialist for more than five years.

43. The chest x-ray revealed emphysematous changes as well as an underlying mass for which a CT of the chest was strongly recommended. The radiology report noted, in all capital letters: "SIGNIFICANT ABNORMALITY, ATTN NEEDED."

44. No one from the VAMC called Mr. Ecklund with the results of the chest x-ray or advised him that a CT of the chest was needed to further explore the mass that was seen on the x-ray imaging.

45. After not hearing anything, Mr. and Mrs. Ecklund called the VAMC nurses' line to inquire as to the x-ray results.

46. Debra Bell Parmley in Customer Support at the VA entered a note on October 28, 2020, as follows: "Veteran would like a return call from his PCP or NURSE. Veteran is calling to get the results of his X-rays dated 9/23/20." During this call, Mr. and Mrs. Ecklund were told that the results were available online and that they could pull them up.

47. Mr. and Mrs. Ecklund promptly pulled up the x-ray results on October 28, 2020 after getting off the phone with the VAMC and discovered that a mass had been found, a CT of the chest had been strongly recommended, and that this was a "SIGNIFICANT ABNORMALITY, ATTN NEEDED."

48. After discovering these results, Mr. and Mrs. Ecklund called the VAMC for a second time on October 28, 2020 and reported to the nurses' line that Mr. Ecklund had an abnormal chest x-ray and that a follow-up CT scan had been recommended.

49. Janell Weeks, RN entered a progress note in Mr. Ecklund's chart on October 28, 2020, stating, "Writer spoke with veteran. He is concerned about his abnormal cxray that he found on Myhealthevet. He desires to discuss results and plans."

50. Due to this delay in the VAMC reading and taking action on the abnormal September 23, 2020 chest x-ray, an order for a CT of the thorax was not written until October 29, 2020, more than five weeks after Mr. Ecklund's chest x-ray showed an underlying mass, and only after Mr. and Mrs. Ecklund took it upon themselves on October 28, 2020 to follow up on the results of the chest x-ray.

51. The CT of the chest with contrast was performed at Grand Strand Regional Medical Center ("Grand Strand") on December 23, 2020.

52. The CT revealed a 2.2 cm right upper lobe spiculated pulmonary nodule concerning for malignancy. Additionally, a non-specific 1.1 cm part-solid nodule within the right upper lobe abutting the mediastinal margins was also noted.

53. A positron emission tomography (PET) scan was recommended for further evaluation.

54. Approximately two weeks after the CT scan showing nodules concerning for malignancy, on January 5, 2021, the VAMC ordered a PET scan.

55. A whole-body PET scan with a CT scan of the chest, abdomen, and pelvis was performed on January 20, 2021, which revealed that Mr. Ecklund had Stage 4 lung cancer with metastasis as well as multiple foci of osseous (bone) and liver metastases.

56. Specifically, in the chest, there was a hypermetabolic right upper nodule concerning for malignancy and hypermetabolic lymphadenopathy in the right hilar, left hilar, and right paratracheal regions consistent with metastases. There were multiple foci of liver metastases. Additionally, there were osseous metastases in the sternum, posterior 3rd rib, left T4 transverse process, posterior left 5th rib, and left scapula. There was also noted to be increased metabolic activity at T5, suspicious for osseous metastasis.

57. On January 25, 2021, Mr. Ecklund underwent an MRI of the brain, which showed multiple bilateral cerebral and cerebellar metastases. There were approximately a dozen left cerebellar hemisphere and metastases, at least a dozen right cerebral metastases involving the frontal, temporal, parietal, and occipital lobes, approximately nine left cerebral metastases, and mild-moderate mass effect on the fourth ventricle.

58. On January 27, 2021, Yuval Naot, M.D., a hematology and oncology attending physician at the VAMC, called Mr. Ecklund to discuss the PET/CT findings, MRI of the brain, as well as the preliminary pathology report. Mr. Ecklund was instructed to go directly to the Emergency Department at Grand Strand.

59. Mr. Ecklund was hospitalized at Grand Strand from January 27-30, 2021.

60. During the admission at Grand Strand, Mr. Ecklund had a radiation oncology consult, in which whole brain radiation was recommended and planned on an outpatient basis.

61. Initially, surgery was scheduled for February 1, 2021 for neurosurgical decompression of Mr. Ecklund's 4th ventricle, but was subsequently cancelled given his multiple lesions and belief that resection would not likely change his prognosis. It was therefore decided to start Mr. Ecklund on radiation and chemotherapy.

62. The pathology report was returned on January 28, 2021 as consistent with adenocarcinoma (a type of cancer that starts in the glands lining the insides of organs, such as the lung).

63. On January 30, 2021, Mr. Ecklund was discharged home.

64. Mr. Ecklund saw Dr. Geoffrey Ray on February 5, 2021 to discuss his treatment options.

65. Due to the significant number of brain lesions along with the size of some of the lesions, Dr. Ray recommended whole brain radiation therapy.

66. Mr. Ecklund had a follow-up CT of the head on February 8, 2021.

67. Between February 10 and February 23, 2021, Mr. Ecklund underwent whole brain radiation.

68. On March 4, 2021, Mr. Ecklund had an office visit with oncologist Dr. Gretchen Meyer.

69. The note reflects that Dr. Meyer discussed with Mr. Ecklund that he had extensive widespread metastatic disease, with brain, lung, liver, and bone metastasis. She recommended chemotherapy with immunotherapy, and Mr. Ecklund elected to proceed with treatment.

70. The treatment plan was to begin 3-4 cycles of chemotherapy and then to repeat imaging to assess response.

71. Chemotherapy was initiated with Carboplatin, Alimta, and Keytruda.

72. A PET scan taken on May 17, 2021 showed decrease in the density in the upper lobe and persistent skeletal metastases.

73. An MRI of the brain on June 8, 2021 showed decreased size of the lesions and edema in response to radiation therapy. The overall number of visible lesions had decreased as well. No new masses were seen.

74. On July 3, 2021, Mr. Ecklund reported to the Emergency Department at Grand Strand with a four-day history of worsening shortness of breath and cough. He was not on home oxygen at the time.

75. In the Emergency Department, he required 6L of supplemental oxygen to maintain oxygen saturation rates in the 90s.

76. A CTA of the chest showed increased areas of bony metastases.

77. He was treated for COPD exacerbation with steroids and antibiotics but declined to be admitted.

78. Mr. Ecklund completed six cycles of chemotherapy and began a maintenance dose with Alimta and Keytruda.

79. His hemoglobin dropped significantly following cycle 6, and he required a blood transfusion.

80. Mr. Ecklund was also started on home oxygen therapy.

81. On August 30, 2021, Mr. Ecklund followed up with his oncologist, Dr. Meyer. He was noted to be very fragile overall and still experiencing progressive side effects from the chemotherapy.

82. On September 2, 2021, CT scans of the chest, abdomen, and pelvis and a nuclear bone scan showed multiple areas of bone and hepatic metastases.

83. A September 13, 2021 MRI of the brain showed grossly similar appearance of the multiple intracranial metastases as compared to the June 8, 2021 study.

84. At an October 1, 2021 appointment at the VAMC, Mr. Ecklund had diminished lung sounds and experienced oxygen desaturations below 68% with prolonged conversations and mild activity. A new pulmonology consult was made for follow-up of his COPD treatment given poor control on his inhaler regimen.

85. At an October 7, 2021 appointment, oncologist Dr. Meyer reviewed the results of a follow-up October 4 nuclear medicine total bone scan, which showed further disease progression with increasing intensity and more numerous bilateral rib uptake.

86. Dr. Meyer explained that the scan showed continued disease progression with the current regimen of Alimta and Keytruda, and therefore recommended changing Mr. Ecklund's treatment to Taxotere with Ramcurimab. The plan was to complete 3 cycles on the new regimen and then perform follow-up imaging.

87. Mr. Ecklund began this new round of chemotherapy on October 15, 2021.

88. On November 22, 2021, EMS was called to Mr. Ecklund's home due to his complaints of shortness of breath and altered mental status.

89. Upon EMS's arrival, Mr. Ecklund was confused, and his blood sugar was low at 59.

90. He was taken via EMS to the Emergency Department at Grand Strand, where he was largely unresponsive.

91. Given his presentation and metastatic bony lesions all over his body, hospice care was recommended, which Plaintiff agreed to.

92. A palliative care consultation was held, and the decision was made to transfer Mr. Ecklund to Embrace Hospice House on November 22, 2021.

93. Mr. Ecklund passed away on November 23, 2021 at Embrace Hospice House. He was 68 years old.

94. The United States of America, through the Veterans Administration and its facilities, had the right or power to direct and control the way its employees, nurses, physicians, and/or agents provided medical care to Mr. Ecklund.

95. Recognizing that lung cancer is the leading cause of death in the United States, the VA has established standards for screening veterans for lung cancer.

96. According to the VA's own website, "[s]creening with low dose CT (computed tomography) scans in older persons who have smoked cigarettes for many years can help to find lung cancer at an earlier, more treatable stage. CT screening has been shown to reduce a person's chance of dying from lung cancer. Annual screening for lung cancer is recommended for persons ages 50 to 80 who are current smokers or former smokers who have quit within the past 15 years and who have smoked cigarettes for many years (at least 20 pack-years: one pack per day for 20 years or a comparable amount, such as ½ pack per day for 40 years or 2 packs a day for 10 years)." U.S. Department of Veterans Affairs, National Center for Health Promotion and Disease Prevention, Screening for Lung Cancer, *available at*: https://www.prevention.va.gov/preventing_diseases/screening_for_lung_cancer.asp.

97. Having smoked cigarettes for over "20 pack-years," Mr. Ecklund met the criteria for annual screening for lung cancer pursuant to the VA's own guidelines.

98. He trusted and relied upon his doctors and other medical professionals to recommend and implement diagnostic and treatment plans based on his medical history and presentation.

99. However, Mr. Ecklund was not screened annually for lung cancer.

100. Earlier screening in Mr. Ecklund, who was at high risk for developing lung cancer, would have resulted in much earlier detection and a better outcome.

101. Additionally, once Mr. Ecklund showed signs and symptoms of lung cancer, the VAMC unreasonably and negligently delayed ordering and conducting tests to confirm Mr. Ecklund's cancer diagnosis and initiating treatment.

102. Mr. Ecklund had abnormal chest imaging on September 23, 2020.

103. No one from the VAMC acted in response to the radiology report, which noted, "SIGNIFICANT ABNORMALITY, ATTN NEEDED" until Mr. and Mrs. Ecklund called to follow up on the results.

104. Even then, Mr. and Mrs. Ecklund were directed to pull the results themselves online.

105. Not until the Ecklunds alerted the VAMC staff of the mass detected on Mr. Ecklund's chest x-ray did the VAMC take action, resulting in a five-week delay in the VAMC writing an order for the CT scan.

106. Further, the CT scan was not completed until December 23, 2020, three months after the initial chest x-ray showed a mass in his lung.

107. This delay in diagnosis and treatment not only delayed the initiation of treatment for Mr. Ecklund, but it also caused Mr. and Mrs. Ecklund and their family emotional distress in awaiting a final diagnosis.

108. The injuries to Plaintiff and the suffering and death of Mr. Ecklund were the direct and proximate result of and were caused and occasioned by the negligence, carelessness, recklessness, willfulness, and wantonness on the part of the United States and its agents, employees, and servants in failing to possess and exercise that degree of medical training, competency, and skill ordinarily and customarily possessed and exercised by medical professionals in similar circumstances. Attached as **Exhibit 1** is the Affidavit of Carol Anne Rupe, M.D. who will testify as to one or more deviations from the applicable standard of care.

**FOR A FIRST CAUSE OF ACTION**
**(WRONGFUL DEATH)**

109. Plaintiff reiterates paragraphs 1 – 108 above as if set forth verbatim herein.

110. The Defendant United States of America, through its agents, servants, and/or employees, undertook the duty to render medical care to Mr. Ecklund in accordance with the prevailing and acceptable professional standards of care in the national community.

111. Notwithstanding said undertaking and while Mr. Ecklund was under the care of agents, servants, and/or employees of the Defendant United States of America, Defendant departed from prevailing and acceptable professional standards of care and treatment of Mr. Ecklund and was negligent, careless, grossly negligent, reckless, and in violation of the duties owed to Mr. Ecklund. As such, the United States is liable for one or more of the following acts of omission or commission, any or all of which are departures from the prevailing and acceptable professional standards of care:

    a. In failing to perform timely and proper screenings for lung cancer;

    b. In failing to order or to otherwise ensure that Mr. Ecklund underwent appropriate diagnostic testing and/or radiology studies given his history, presentation, and symptoms;

    c. In failing to timely and appropriately follow up on radiology studies and pulmonary function tests that had been ordered;

    d. In failing to communicate critical imaging findings and other test results in a timely manner;

    e. In failing to make necessary referrals in a timely manner;

    f. In failing to follow proper policies and procedures regarding lung cancer screenings; and

    g. In such other ways as may be identified through discovery.

112. As a direct and proximate result of the negligence, carelessness, gross negligence, recklessness, and departures from the professional standards of care by Defendant and its agents, servants, and/or employees, Gregory Scott Ecklund suffered from severe debilitating injuries and an untimely and wrongful death. The Defendant and its agents, servants, and/or employees caused Plaintiff and Decedent's beneficiaries to lose his support, aid, society, comfort, and companionship. Plaintiff, as Decedent's Personal Representative, is therefore entitled to recover from Defendant a sum of money to compensate the heirs at law for all damages allowable under law for the wrongful death action. All damages should be in an amount determined by a judge at trial.

### FOR A SECOND CAUSE OF ACTION
### (SURVIVAL)

113. Plaintiff reiterates paragraphs 1 – 112 as if set forth verbatim herein.

114. As a direct and proximate result of the negligence, carelessness, gross negligence, recklessness, and departure from professional standards of care by Defendant and its agents, servants, and/or employees as set forth herein, Mr. Ecklund suffered from severe debilitating injuries which caused him conscious pain and suffering while alive, caused his Estate to incur medical bills, and caused expenses associated with his funeral. Plaintiff, as Personal Representative of Mr. Ecklund's Estate, is entitled to recover from Defendant a sum of money to compensate his Estate for all damages allowable under the survival action. All damages should be in an amount determined by a judge at trial.

### FOR A THIRD CAUSE OF ACTION
### (LOSS OF CONSORTIUM)

115. Plaintiff reiterates paragraphs 1 – 114 above as if set forth verbatim herein.

116. As a direct and proximate result of the negligence, carelessness, gross negligence, recklessness, and departures from professional standards of care as set forth herein, Mrs. Ecklund, as the wife of Mr. Ecklund, suffered a loss of consortium. She is therefore entitled to an award of damages to compensate her for the loss of her husband's society, comfort, companionship, and support. In addition, Mrs. Ecklund lost income by loss of earnings capacity and via the necessity of providing extraordinary medical care for her husband. She is entitled to an award of actual and consequential damages in an amount to be determine by a judge at trial.

WHEREFORE, Plaintiff respectfully prays for judgment against the Defendant for actual damages, special damages, and consequential damages in an amount to be determined by the judge at the trial of this action, for the costs and disbursements of this action, and for such other and further relief as this Court deems just and proper.

[SIGNATURE BLOCK ON FOLLOWING PAGE]

        MCGOWAN, HOOD, FELDER & PHILLIPS, LLC

        By: s/TIMOTHY M. MCKISSOCK
           Timothy M. McKissock
           Federal Bar No.: 6257
           Erin R. Stuckey
           Federal Bar No.: 9868
           1517 Hampton Street
           Columbia, South Carolina 29201
           (803) 779-0100
           tmckissock@mcgowanhood.com
           estuckey@mcgowanhood.com

           S. Randall Hood
           Federal Bar No.: 6103
           1539 Health Care Dr.
           Rock Hill, SC 29732
           (803) 327-7800
           (803) 324-1483 Facsimile
           rhood@mcgowanhood.com

        *Attorneys for Plaintiff*

Columbia, South Carolina
April 10, 2023